IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

ROBERT SAPANARA,        )        CIVIL NO. 10-00056 SOM-BMK
#A1027388,              )
                        )        FINDINGS AND RECOMMENDATION
            Petitioner, )        TO DENY PETITION FOR WRIT OF
                        )        HABEAS CORPUS
      vs.               )
                        )
TODD THOMAS,            )
                        )
            Respondent. )
                        )
_____ )

**FINDINGS AND RECOMMENDATION TO DENY
PETITION FOR WRIT OF HABEAS CORPUS**

Before the court is *pro se* Petitioner Charles Anthony Sapanara's

Petition for Writ of Habeas Corpus (Petition), brought pursuant to 28 U.S.C.

§ 2254.[1]  Respondent State of Hawaii (State or Respondent) has filed an Answer to

the Petition, and Stanley has filed a Reply.  (Docs. 22 & 23.)  The Petition has been

referred to this court pursuant to 28 U.S.C. § 636(b) and Rule LR72.5 of the Local

Rules of Practice of the United States District Court for the District of Hawai'i.

The court FINDS that Sapanara's Petition is without merit, and RECOMMENDS

that it be DENIED with prejudice.

_____

[1] Sapanara is a Hawaii prisoner incarcerated at the Saguaro Correctional Facility, located
in Eloy, Arizona.

# I. **BACKGROUND**

On November 25, 2003, Sapanara was convicted by jury trial in the Family Court of the First Circuit of four counts of Sexual Assault in the First Degree, in violation of section 707-730(1)(b) of Hawaii Revised Statutes (HRS),[2] and three counts of Sexual Assault in the Third Degree, in violation of HRS section 707-732(1)(b), for the sexual assault of his two daughters under the age of fourteen.[3]  (Resps.' Ex. B.)

On February 18, 2004, after previously denying Sapanara's motions for acquittal and for a new trial, the trial court sentenced Sapanara to a twenty-year prison term on each count of Sexual Assault in the First Degree, and to a five-year

---

[2] Section 707-730(1)(b) (1993) provides:

(1) A person commits the offense of sexual assault in the first degree if:
. . .

(b) The person knowingly subjects to sexual penetration another person who is less than fourteen years old . . . .

[3] Section 707-732(1)(b) (1993) provides:

(1) A person commits the offense of sexual assault in the third degree if:
. . .

(b) The person knowingly subjects to sexual contact another person who is less than fourteen years old or causes such aperson to have sexual contact with the person[.]

prison term on each count of Sexual Assault in the Third Degree, all terms to be served concurrently.  (Resps.' Ex. E.)

Sapanara directly appealed his conviction, arguing that: (1) the trial court had violated his due process rights by not allowing the defense to adduce video evidence of Sapanara and his daughters happily interacting; and (2) he had been denied the effective assistance of counsel.  (Resps.' Ex. F, 27-28.)

On November 18, 2005, the Hawaii Intermediate Court of Appeals (ICA) affirmed Sapanara's conviction and sentence.  (Resps.' Ex. I.)  The ICA ruled that the trial court had not abused its discretion under Rule 403 of the Hawaii Rules of Evidence by excluding the videotape, because it was of minimal probative value, was of even less value for impeachment purposes as it was taken prior to Sapanara's alleged abuse of Complainant 2, and would have created the risk that the jury might have overemphasized its importance in evaluating Sapanara's relationship with his daughters.  (*Id.*, 8-9 .)

The ICA also held that Sapanara's counsel had provided effective assistance. The ICA said, first, that Sapanara's counsel made a reasonable, tactical strategic decision to cross-examine Complainants 1 and 2, although he may have been unsuccessful in eliciting the information he had hoped. (Resps.' Ex. I, 11-12.) Second, the ICA held that counsel was not ineffective under Rule 609.1 of the

Hawaii Rules of Evidence in failing to lay a foundation to introduce evidence that Sapanara's daughters had falsely accused him because they resented doing chores. (*Id.*, 12-14.)  The ICA held that counsel had indeed asked Complainant 1 if she resented doing chores and had the opportunity to cross-examine the daughters' grandmother on the same issue but had made a permissible strategic choice not to do so.  The court also stated that this claim "was so implausible [in light of the more likely motive that the girls' mother influenced them to fabricate the charges so that she could regain custody] that Sapanara's counsel properly declined to pursue it."  (*Id.*, 14.)

On December 19, 2005, Sapanara filed an application for certiorari with the Hawaii Supreme Court.  (Resps.' Ex. J.)  Sapanara argued that the ICA had erred by concluding: (1) that the exclusion of the videotape was not an abuse of discretion under Rule 403; and (2) that counsel had not been ineffective when (a) counsel deliberately elicited harmful testimony from prosecution witnesses, and (b) counsel elicited prior bad acts evidence that was allegedly not part of a reasonable trial strategy.  (*Id.*, 6-7, 8-12.)

On December 29, 2005, the Hawaii Supreme Court denied certiorari. (Resps.' Ex. K.)

4

On June 6, 2006, Sapanara filed a "Motion for DNA Testing/Bill of Particulars for Family Court Criminal case FC-CR. No. 03-1-0004" (DNA Motion).  (Resps.' Ex. N.)  The DNA Motion sought DNA testing of "all specimens such as hair, blood, saliva, semen, vaginal swabs, [and] vaginal smears," from his two daughters that Sapanara alleged were in the possession of the State of Hawaii.  (Doc. 3, Ex. 16.)  Sapanara also requested  a bill of particulars concerning the charges underlying his conviction.  (Resps.' Ex. S, 6, 11.)

On December 21, 2006, Sapanara filed a federal habeas petition in this court (First Petition).  (Civ. No. 06-00671 SOM-BMK.)  He raised three grounds for relief: (1) "Conviction was Obtained because Courts Excluded Video Tape Testimony Which was Crucial to Defendant's Case"; (2) ineffective assistance of counsel; and (3) "actual and factual" innocence.  Sapanara admitted that ground three, his innocence claim, was not brought on direct appeal, but was raised for the first time in his DNA Motion that was pending in state court.

On February 6, 2007, the state circuit court designated the DNA Motion as a non-conforming petition for post-conviction relief and directed Sapanara to file a supplemental petition within ninety days of the order.  (Resps.' Ex. N.)

On March 28, 2007, this court dismissed the First Petition without prejudice. *Sapanara v. Parker*, CV No. 06-00671 SOM-BMK (Doc. 12).  The court found that ground three, pertaining to the DNA Motion, and grounds one and two were not fairly presented as federal claims in the state courts.  (*Id.*)  Therefore, the court concluded that Sapanara's federal claims were unexhausted.  (*Id.*)

On May 9, 2007, rather than file a supplemental petition in his pending DNA Motion proceedings, Sapanara filed a new action for post conviction relief in the state court pursuant to Rule 40 of the Hawaii Rules of Penal Procedure (HRPP).  (Resps.' Ex. Q.)  The Rule 40 petition claimed (1) ineffective assistance of trial and appellate counsel, (2) prosecutorial misconduct, (3) abuse of discretion by the trial judge for, among other things, excluding video tape evidence of his two daughters, and (4) improper denial of the DNA Motion[4].  (*Id.*)

On February 4, 2008, the state court denied Sapanara's Rule 40 petition.  (Resps.' Ex. S.)  The court ruled that the ineffective assistance of trial counsel claims and certain abuse of discretion claims were either previously ruled upon or were waived under HRPP Rule 40.  (*Id.*)  The court also ruled that claims raised in the DNA Motion were not raised at trial and therefore could not be raised

---

[4] At the time Sapanara filed his Rule 40 petition, the DNA Motion had not been denied and was still pending as a special proceeding in state court.  However, on May 17, 2007, the state court dismissed the DNA Motion because Sapanara failed to file a supplemental petition as instructed in a prior order.  (Resps.' Ex. R.)

for the first time on direct appeal.  (*Id.*)  The remaining claims were denied on the merits.  (*Id.*)

Sapanara appealed the denial of his Rule 40 petition to the ICA. (Resps. Ex. T.)  He claimed that the court erred in finding that (1) his trial and appellate counsel were effective, (2) the prosecutor did not engage in misconduct, (3) the trial court did not abuse its discretion, and (4) the DNA Motion was not improperly denied.  (*Id.*)

On April 27, 2009, the ICA issued a summary disposition order affirming the denial of Sapanara's Rule 40 petition.  (Resps.' Ex. W.)  The ICA rejected Sapanara's claims that (1) his trial counsel provided ineffective assistance of counsel, (2) the prosecutor engaged in misconduct, and (3) the trial court abused its discretion.  The ICA concluded that those claims were either previously ruled upon or were waived because Sapanara did not raise them on direct appeal.  (*Id.*) The ICA also concluded, on the merits, that Sapanara's appellate counsel was not ineffective and that the denial of the DNA Motion did not violate his right to prove his "actual and factual innocence."  (*Id.*)

On October 26, 2009, Sapanara petitioned for a writ of certiorari with the Hawaii Supreme Court.  (Resps. Ex. X.)  The petition was dismissed as untimely.  (Resps. Ex. Y.)

## II.  <u>LEGAL STANDARD</u>

This Petition is governed by the Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254.  *Woodford v. Garceau*, 538 U.S.

202, 204 (2003); *Brown v. Farwell*, 525 F.3d 787, 792 (9th Cir. 2008).  Under the

AEDPA, habeas corpus relief may not be granted on any claim that was

adjudicated on the merits in state court unless the adjudication "resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly

established federal law as determined by the Supreme Court of the United States,"

or "resulted in a decision that was based on an unreasonable determination of the

facts in light of the evidence presented in the State court proceeding."  28 U.S.C.  §

2254(d)(1),(2); *Williams v. Taylor*, 529 U.S. 362, 402-04 (2000).

A decision is contrary to federal law if the state court applies a rule of

law that contradicts Supreme Court precedent or makes a determination contrary to

a Supreme Court decision on materially indistinguishable facts.  *Brown*, 525 F.3d

at 792.  A state court unreasonably applies federal law when its application of

Supreme Court precedent to the facts of petitioner's case is objectively

unreasonable.  *Id.* at 793 (citation omitted).  "Factual determinations by state courts

are presumed correct absent clear and convincing evidence to the contrary."

*Cooper v. Brown*, 510 F.3d 870, 919 (9th Cir. 2007) (*quoting Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)); 28 U.S.C. § 2254(e)(1)).

Relief may be granted on a federal habeas petition only if the state court error caused "actual prejudice" or had a "substantial and injurious effect or influence" in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In other words, relief may not be granted if a petitioner merely shows that there is a reasonable possibility that the error contributed to the verdict. *Id.*

## III. DISCUSSION

Sapanara asserts numerous grounds for relief in both the Petition and his memorandum in support of the Petition (collectively, Petition). (Docs. 1, 3.) Reviewing both together, it appears that Sapanara raises the following claims: (1) abuse of discretion of certain trial rulings (Ground One);[5] (2) improper denial of the DNA Motion (Ground Two); (3) prosecutorial misconduct (Ground Three);[6]

---

[5] Sapanara alleges that the trial court abused its discretion by (1) allowing perjured testimony, (2) violating Federal [sic] Rules of Evidence 404(b) by allowing "Other Crimes and Bad Acts" into evidence, (3) failing to give curative instructions after witnesses testified concerning other crimes and bad acts, (4) failing to *sua sponte* move for a mis-trial based on the prosecutor's inquiry before the jury of whether Sapanara was going to testify, (5) denying admission of videotape evidence of a family outing with Sapanara and his daughters, (6) committing cumulative errors, (7) finding him guilty despite the prosecution's failure to prove sexual penetration, (8) failing to give a lesser-included charge instruction, and (9) allowing improper hearsay testimony.

[6] Sapanara alleges that the prosecutor engaged in misconduct by (1) utilizing perjured testimony, (2) charging Sapanara for crimes he did not commit, (3) eliciting testimony of other

(continued...)

(4) ineffective assistance of trial counsel (Ground Four);[7] and (5) ineffective

assistance of appellate counsel (Ground Five).  (*Id.*)

## A.        Grounds One, Three and Four are Procedurally Defaulted

A petitioner is deemed to have procedurally defaulted his claim if he

failed to comply with a state procedural rule, or failed to raise the claim at the state

level at all.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Edwards v.

Carpenter*, 529 U.S. 446, 451 (2000).  For a procedural bar to apply, the state

procedural rule relied upon must be "independent and adequate."  *Coleman*, 501

U.S. at 730.  If state procedural rules preclude the state courts from hearing the

claim prior to the filing of the federal petition, it is procedurally defaulted in

federal court.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  There is no

procedural default unless "the last state court rendering a judgment in the case

---

[6](...continued)
crimes and bad acts that Sapanara was never charged for, (4) vouching for the credibility of the
victim's testimony in closing argument, (5) asking, in the presence of the jury, whether Sapanara
was going to testify, (6) denied him access to do DNA testing, (7) "overcharging" him, (8)
committing cumulative errors, and (9) coercing a witness to testify.

[7] Sapanara alleges that his trial counsel was ineffective by (1) failing to obtain DNA
testing to prove Sapanara's innocence, (2) failing to call or interview potential witnesses that
would have testified Sapanara was at work during certain of the alleged assaults, (3) failing to
argue that Sapanara was in Pennsylvania or the Big Island during certain of the alleged assaults,
(4) eliciting improper testimony regarding Sapanara's prior bad acts and crimes, (5) "opening the
door" to improper cross-examination of a witness, and (6) failing to show Sapanara a copy of the
"plea negotiation" which the state was willing to offer in lieu of prison.

'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).

Respondents argue that Grounds One, Three and Four are procedurally defaulted. This court agrees. Relying upon HRPP Rule 40(a)(3), the ICA concluded that the claims raised in Grounds One, Three and Four were either previously ruled upon or waived.[8] *See Sapanara v. State*, 120 Hawaii 383, 205 P.3d 648, 2009 WL 1111598 *2 *unpub.* (Haw. App., April 27, 2009). Rule 40(a)(3) provides that state prisoners are precluded from obtaining post-conviction relief on issues that have "been previously ruled upon or were waived." HRPP 40(a)(3). The Ninth Circuit has held that Rule 40(a)(3) is consistently applied and an adequate and independent state procedural rule sufficient to support procedural default. *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003); *see also Elizares v. Parker*, No. 06-465 HG-LEK, 2007 WL 2048832, at *2-3 (D. Haw. July 12, 2007) (adopting the Magistrate Judge's finding that Rule 40(a)(3) is an adequate and

---

[8] In particular, the ICA stated,

> We reject Sapanara's claims that: 1) his trial counsel provided ineffective assistance; 2) the prosecutor engaged in misconduct; and 3) the trial judge abused his discretion. Those claims were either previously ruled upon or were waived because Sapanara did not raise them on direct appeal, and Sapanara did not show the existence of extraordinary circumstances justifying his failure to raise the claims on direct appeal.

*Id.* (citing HRPP 40(a)(3); *Stanley v. State*, 76 Hawaii 446, 450-51, 879 P.2d 551, 555-56 (1994)).

independent state procedural rule sufficient to support a finding of procedural default), *aff'd*, No. 07-16491, 2009 WL 766506 (9th Cir. Mar. 24, 2009).

First, Sapanara asserts in Ground One that his federal constitutional rights were violated when the trial court abused its discretion in various trial court rulings.  With the exception of the denial of videotape evidence, claims that the trial court abused its discretion under state law were raised for the first time in the Rule 40 petition.  Although Sapanara raised the denial of videotape evidence claim as a state law violation on direct appeal, he raised it as federal constitutional claim for the first time in the Rule 40 petition.[9]  The ICA rejected these claims pursuant to Rule 40(a)(3) on the basis that they were waived, because Sapanara failed to raise them on direct appeal.  *See Sapanara*, 120 Hawaii 383, 205 P.3d 648, 2009 WL 1111598 *2 (citing HRPP 40(a)(3); *Stanley v. State*, 76 Hawaii 446, 450-51, 879 P.2d 551, 555-56 (1994)).

Second, Sapanara asserts in Ground Three that his federal constitutional rights were violated when the prosecutor engaged in misconduct. These claims were not raised on direct appeal and were made for the first time in

---

[9] As discussed *supra*, this court dismissed without prejudice Sapanara's claim that he was improperly denied the admission of videotape evidence as unexhausted because he did not raise it as a federal claim on direct of his conviction.  (*See* Civ. No. 06-00671 SOM-BMK, Doc. 12.)

the Rule 40 petition.  The ICA also rejected these claims on the basis that they were waived because Sapanara failed to raise them on direct appeal.  *See id.*

Finally, Sapanara's claims that he received ineffective assistance of counsel in violation of Hawaii state law were raised on direct appeal.  However, his claim that he received ineffective assistance of counsel in violation of the *federal* constitution was raised for the first time in the Rule 40 petition.[10] The ICA rejected his state law claims as previously ruled upon and rejected his federal claims as waived.  *See id.*  Accordingly, in denying the claims raised in Grounds One, Three and Four, the ICA clearly and expressly declared that its judgment rested on a state procedural bar and those claims are procedurally defaulted.

Because Sapanara procedurally defaulted Grounds One, Three and Four, federal habeas review of those claims is barred absent a showing of "cause and prejudice" or a "fundamental miscarriage of justice."  *Edwards*, 529 U.S. at 451; *Coleman*, 501 U.S. at 750-51; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Noltie v. Peterson*, 9 F.3d 802, 804-05 (9th Cir. 1993).  Sapanara fails to make either of these showings.

---

[10] Also as discussed *supra*, this court dismissed without prejudice Sapanara's ineffective assistance of counsel claim as unexhausted because he did not raise it as a federal claim on direct appeal of his conviction.  (*See id.*)

Sapanara argues that the cause for procedural default rests with his appellate counsel who failed to preserve his federal claims on direct appeal of his conviction.  An attorney's failure to raise or preserve a particular claim on appeal is reviewed "under the cause and prejudice standard when that failure is treated as a procedural default by the state courts."  *Carrier*,  477 U.S. at 492.  An attorney error that results in a procedural default does not constitute cause unless it satisfies the standard for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Id.* at 488.  Indeed, "cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim."  *Id.* at 492; *see McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (examples include government interference or reasonable unavailability of factual basis for claim).

Sapanara does not argue that his appellate counsel's conduct fell below the standard in *Strickland*.  He also fails to assert or otherwise show that there was an external impediment that might have prevented his appellate counsel from raising or preserving his federal claims raised.  Instead, his only argument is that his appellate counsel failed to argue Grounds One, Three and Four as *federal* constitutional violations on direct appeal.  That argument is unavailing.  Sapanara's appellate attorney's decision to frame his arguments on direct appeal as state law

14

questions only appears to be a tactical decision.  For example, Sapanara's

ineffective assistance of trial counsel claims presented using State cases only, was

likely a strategic choice to take advantage of less stringent Hawaii law standards.

*See Briones v. State*, 74 Haw. 442, 848 P.2d 966 (1993) (rejecting the more

stringent federal ineffective assistance of trial standard set forth in *Strickland*).

Although that strategy may have ultimately failed, the decision to employ it is not

cause for procedural default.  *See Reed v. Ross*, 468 U.S. 1, 13 (1984) ("Underlying

the concept of cause . . . is  . . . the . . . notion that, absent exceptional

circumstances, a defendant is bound by the tactical decisions of competent

counsel.")

Moreover, even if the failure to frame the claims in Grounds One,

Three and Four as federal constitutional claims was not a strategic decision by

Sapanara's appellate counsel, "the mere fact that counsel failed to recognize the

factual or legal basis for a claim, or failed to raise the claim despite recognizing it,

does not constitute cause for a procedural default." *Carrier*,  477 U.S. at 486.

Ignorant or inadvertent attorney error does not satisfy the cause and prejudice

standard. *Id.* at 487.  Sapanara therefore fails to demonstrate cause for the

procedural default of Grounds One, Three and Four.  Because Sapanara has not

shown cause, the court need not reach the issue of prejudice.  *See Smith v. Murray*,

15

477 U.S. 528, 533 (1986); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991).

Finally, Sapanara fails to demonstrate that the failure to consider Grounds One, Three and Four will result in a fundamental miscarriage of justice. In the federal habeas context, this "miscarriage of justice" exception is limited to habeas petitioners who can show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The required evidence must create a colorable claim of actual innocence, that the petitioner is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id.* at 321. It is not enough that the evidence show the existence of reasonable doubt, petitioner must show "that it is more likely than not that no 'reasonable juror' would have convicted him." *Id.* at 329. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence-that was not presented at trial." *Id.* at 324.

Sapanara presents no new evidence that would show that he is actually innocent of sexually assaulting his daughters. The only new evidence that Sapanara alludes to is his post-trial request for DNA testing of certain evidence

allegedly taken from his daughters at the time they reported the assaults.  However, as the ICA concluded,

> Sapanara was charged with sexually assaulting Complainant 1 between 1995 and January 2000 and Complainant 2 between 1995 and June 2000.  The alleged vaginal swabbing of Sapanara's daughters did not occur until after the daughters reported the charged sexual assaults in March 2002.  Thus, at least eighteen months had passed between the charged sexual assaults and the purported taking of the vaginal swabs.  Sapanara did not provide the circuit court with any basis for concluding that, under the circumstances of this case, DNA testing could possibly assist in demonstrating his innocence.

(Respts.' Ex. W at 4.)  This court agrees with the ICA that the post-trial request for DNA testing could not reasonably lead to new evidence that would show that it is more likely than not that no reasonable juror would have convicted him.  *See Schlup*, 513 U.S. at 329.

Moreover, Sapanara's own documents indicate that DNA testing would be of no assistance to his case.  (*See* Doc. 3, Attach. 4.)  In a letter from The Hawaii Innocence Project to Sapanara dated May 27, 2009, a Ms. Russo explained to Sapanara that although he was willing to provide his own DNA sample, there would be nothing to compare it to because "no vaginal swabs [of his daughters] were taken."  (*Id.*)  Therefore, a fundamental miscarriage of justice would not result if the court declines to consider Grounds One, Three and Four of this Petition.

**B.      Ground Two - Denial of the DNA Motion**

Sapanara contends that the state circuit court violated his federal constitutional rights when it denied his post-trial DNA Motion.  That motion requested (1) DNA testing of alleged specimens that were extracted from his daughters, and (2) a bill of particulars so that he could obtain exculpatory evidence related to his work time sheets showing that he could not have committed some of the crimes as alleged, in order to prove his "factual and actual innocence" in the Rule 40 petition.  (Doc. 3, Attach. 16.)  Sapanara appears to argue that the state circuit court's denial of the DNA Motion was contrary to or an unreasonable application of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995).  (Doc. 3 at 7.)

*Brady* and its progeny are wholly inapplicable to Sapanara's claim that the state circuit court improperly denied the DNA Motion.  The *Brady* rule is a well-settled doctrine that compels a prosecutor to disclose evidence that is beneficial to the defendant.  *See United States v. Sarno*, 73 F.3d 1470, 1504 (9th Cir. 1995); *see also Kyles*, 514 U.S. at 432-33; *Brady*, 373 U.S. at 87.  The record is void of any evidence indicating that the prosecutor in Sapanara's criminal case withheld DNA evidence or any other exculpatory or beneficial evidence from him.  Instead, Ground Two concerns Sapanara's efforts to obtain DNA testing of certain

18

alleged evidence *after* his conviction and denial of his direct appeal.  Notably,

Sapanara's own documents bring into question whether such alleged evidence even

exists.  (*See* Doc. 3, Attach. 4.)  Therefore, the state circuit court's denial of the

DNA Motion was not contrary to or an unreasonable application of federal law as

set forth in *Brady*.  Accordingly, the court finds and recommends that Ground Two

be DENIED.

## C.      Ground Five - Ineffective Assistance of Appellate Counsel

Sapanara claims ineffective assistance of appellate counsel because

his appellate counsel failed to (1) prove Sapanara's "actual and factual innocence"

by not obtaining DNA testing of evidence, (2) call or interview potential alibi

witnesses, (3) obtain evidence showing that Sapanara was at a different location

than the victims during certain of the alleged assaults, (4) argue that trial counsel

improperly elicited testimony of Sapanara's "other crimes and bad acts," (5) raise

or preserve Sapanara's federal claims in state court, and (6) argue that Sapanara's

trial attorney failed to show Sapanara the state's plea negotiation deal.  These

claims are without merit.

"Claims of ineffective assistance of appellate counsel are reviewed

according to the standard announced in *Strickland*."  *Turner v. Calderon*,  281 F.3d

851, 872 (9th Cir. 2002).  To show ineffective assistance of counsel a petitioner

must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88. After petitioner identifies the acts or omissions that are not the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id.,* 466 U.S. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, petitioner must establish that he was actually prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. To demonstrate prejudice due to appellate counsel's performance, a petitioner must show that, but for appellate counsel's errors, he probably would have prevailed on appeal. *Miller v. Keeney*, 882 F.2d 1428, 1434 n.9 (9th Cir. 1989).

A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (quoting *Strickland*, 466 U.S. at 697).

Appellate counsel is not obligated to raise meritless arguments on a client's behalf. *See Strickland*, 466 U.S. at 687-88. Nor does an indigent

defendant "have a constitutional right to compel appointed counsel to press nonfrivolous points . . . if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).  Appellate counsel "must be allowed to decide what issues are to be pressed[,]" otherwise counsel's professional evaluation would be "seriously undermined." *Id.*; *see also Smith v. Stewart*, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (stating that counsel is not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy."). Thus, appellate counsel is not deficient for failing to raise a weak issue. *See Miller*, 882 F.2d at 1434.

As an initial matter, the court dismisses four of the ineffective assistance of appellate counsel claims as frivolous.  First, there is no basis in law for Sapanara's claims that his appellate counsel was ineffective because he did not (i) call or interview potential alibi witnesses, or (ii) obtain evidence showing he was in a different location than the victims during certain of the alleged assaults. Sapanara points to no authority, and this court is unaware of any, that would require appellate counsel to engage in post-trial fact finding efforts as part of his appellate counsel obligations.  *Cf. Barnes*, 463 U.S. at 751 (stating that defendant has no "constitutional right to compel appointed [appellate] counsel to press nonfrivolous points requested by [defendant]."). Second, Sapanara's claim that his

appellate counsel failed to argue that trial counsel improperly elicited testimony of Sapanara's "other crimes and bad acts" is untrue.  This alleged point of error was explicitly raised on direct appeal by Sapanara's appellate counsel.  (Respts.' Ex. F at 30-31.)  Third, Sapanara's claim that his appellate counsel failed to argue that his trial attorney did not show Sapanara the state's plea negotiation deal, is totally unfounded.  There is absolutely nothing in the record before this court to indicate that Sapanara's trial counsel did not discuss or convey to him the prosecutor's plea offering.  In fact, the document that Sapanara appears to rely on is a letter to him from his trial counsel confirming Sapanara's rejection of the plea offering by the prosecutor.  (Doc. 3, Attach. 1.)  Therefore, these claims are without merit.

Next, the court finds that there is no prejudice regarding Sapanara's claim that his appellate counsel failed to prove Sapanara's "actual and factual innocence" by not obtaining DNA testing of evidence.  As discussed *supra*, DNA testing would not have produced any evidence favorable to Sapanara.  Moreover, and as above, there is no obligation by an appellate counsel to engage in post-trial fact finding efforts such as DNA testing of evidence.

Sapanara also fails to demonstrate that his appellate counsel's alleged failure to preserve or raise certain federal claims fell outside the wide range of competent assistance.  As this court previously discussed, the failure to preserve or

raise certain federal claims, whether intentional or inadvertent, does not fall below the *Strickland* standard and therefore does not constitute cause for procedural default. *See Murray*, 477 U.S. at 486-77. In addition, there appear to be valid tactical reasons behind Sapanara's appellate counsel's decision to frame certain issues as state claims. (*See, supra*, n.8.) Similarly, the decision to raise only certain, and not all, of Sapanara's claims concerning alleged trial court errors, i.e., denying admission of videotape evidence, also appears to have been a tactical appellate strategy to make only the strongest appellate claims. *See Miller*, 882 F.2d at 1434. Those decisions do not fall below the *Strickland* standard as this court will not second-guess an appellate counsel's strategic determinations. *See Barnes*, 463 U.S. at 754. Accordingly, the court finds and recommends that Ground Five be DENIED.

## IV.  <u>CONCLUSION</u>

The court FINDS that Sapanara is not being held in violation of the constitution or laws of the United States, and that the state court's determination of his claims was neither contrary to nor an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. The court therefore RECOMMENDS that the Petition be DENIED with prejudice.

After careful review of the merits of Sapanara's Petition, the court finds that reasonable jurists would not find the court's ruling is debatable. Because, Sapanara has not made a substantial showing of the denial of a constitutional right, the court RECOMMENDS that a certificate of appealability be DENIED.  *See* 28 U.S.C. § 2253(c)(2).

IT IS SO FOUND AND RECOMMENDED.



/s/ Barry M. Kurren
United States Magistrate Judge
Dated: June 4, 2010

## NOTICE

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to 28 U.S.C. § 636(b)(1). Within fourteen [14] days after service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. LR74.2.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within fourteen [14] days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

*Sapanara v. Thomas*, CV 10-00056 SOM-BMK, prose attys\Habeas\PWM\Sapanara 10-00056 (deny habeas)